**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **DAVIS MCARTHUR, by and through** | ) |
| **DANA MCARTHUR, his Court** | ) |
| **Appointed Guardian,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **CIVIL ACTION NO. 7:23-cv-105 (MTT)** |
| | ) |
| **CHAD CASTLEBERRY, in his** | ) |
| **individual and official capacity as** | ) |
| **Chief of the City of Adel, Georgia** | ) |
| **Police Department, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**ORDER**

Plaintiff Davis McArthur, an incapacitated adult, brought this action through Dana

McArthur, his court appointed Guardian, seeking redress for alleged violations of his

constitutional rights during an August 27, 2019, interaction with members of the City of

Adel Police Department and the Cook County Sheriff's Office. (Doc. 1). Now before the

Court are Defendants' motions to dismiss (Docs. 3, 6). Having considered the motions,

pleadings, and relevant law, the Court concludes Plaintiff's claims arising under 42

U.S.C. § 1983 and § 1981 are barred by the applicable statute of limitations. The Court

further finds Plaintiff has not pled facts sufficient to demonstrate a claim for

discrimination in a public accommodation or to establish a right to injunctive and

declaratory relief. The Court accordingly **GRANTS** Defendants' motions to dismiss.

## I.    BACKGROUND

Plaintiff Davis McArthur is a mentally ill individual. (Doc. 1, p. 2). Dana McArthur and Andrea McArthur are Plaintiff's adoptive parents. (*Id.* at p. 3). By Order dated October 13, 2017, the Probate Court of Cherokee County, Georgia declared Plaintiff legally incapacitated and appointed Plaintiff's parents as his legal Guardians. (*Id.* at p. 2-3). Andrea McArthur died on August 5, 2021. (*Id.* at p. 3). Dana McArthur has since served as Plaintiff's sole Guardian. (*Id.*).

On the afternoon of August 26, 2019, Plaintiff became suicidal. (*Id.* at ¶ 10). The group home where Plaintiff resided transported him to Phoebe Sumter Regional Medical Center ("PSRMC") in Americus, Georgia. (*Id.* at ¶ 11). The medical staff at PSRMC examined Plaintiff and issued a Form 1013 Involuntary Transport Order (the "1013 Order"), authorizing Plaintiff's involuntary transport to the Greenleaf Psychiatric Hospital ("Greenleaf") in Valdosta, Georgia, about two hours away. (*Id.*). PSRMC arranged for Transcare Medical, LLC ("Transcare") to transport Plaintiff by ambulance from PSRMC to Greenleaf. (*Id.* at ¶¶ 12, 19).

Emergency medical technicians ("EMTs") employed by Transcare assumed Plaintiff's medical care and began the transport process from Americus to Valdosta. (*Id.* at ¶¶ 12, 13). The transport team stopped in Adel, Georgia, Transcare's regional headquarters, for a crew change in the early morning hours of August 27, 2019. (*Id.* at ¶¶ 12, 14, 17). The plan was for EMT Diana Ray to replace EMT Christy Griffin, who had been on duty for more than seventeen hours. (*Id.* at ¶¶ 14-15). During this staff substitution, Plaintiff "relapsed into a highly agitated and irrational mental state." (*Id.* at

¶ 17). A physical altercation ensued between Plaintiff and Ray. (*Id.* at ¶ 18). Transcare's driver Roosevelt Norwood stopped the ambulance in a parking lot and went to Ray's aid. (*Id.* at ¶ 19). Ray then called 911. (*Id.*).

Defendant John Roberts, a Sergeant with the Adel Police Department, arrived within minutes of the 911 call, followed by two Adel police officers, Defendants Joel Futch and Taylor Green. (*Id.* at ¶ 20). Roberts ordered Futch and Green to seize Plaintiff, handcuff him, and transport him to the Cook County Jail. (*Id.* at ¶ 21). Futch and Green complied with Roberts' instructions and delivered Plaintiff into the custody of Defendant Douglas G. Hanks, the Sheriff of Cook County. (*Id.* at ¶ 23). Plaintiff alleges Roberts, Futch, and Green failed to investigate the situation before arresting Plaintiff. (*Id.* at ¶ 22). Plaintiff further alleges neither the Adel Police Officers nor Sheriff Hanks or anyone at the Cook County Sheriff's Office offered Plaintiff treatment for his wounds or care for his obvious psychiatric crisis. (*Id.* at ¶¶ 22, 24-26, 30).

Upon arrival at the Cook County Sheriff's Office, officials removed Plaintiff's hospital gown and placed him naked in a holding cell with other detainees for several hours. (*Id.* at ¶ 31). Officials later provided Plaintiff with prison coveralls and moved him to the general population of the Cook County Jail. (*Id.* at ¶ 32). Plaintiff remained there until he posted bail nine days later. (*Id.*).

Plaintiff first filed suit against Defendants on August 22, 2022. *See McArthur v. City of Adel, Ga. Police Dep't*, No. 7:22-CV-85 (HL) (M.D. Ga. Aug. 22, 2022). The Court dismissed that action without prejudice on September 13, 2023, finding Plaintiff had not demonstrated good cause for failing to effect service on Defendants for more

than a year after filing the lawsuit. The Court concluded extending the time for service would be futile as Plaintiff did not file his lawsuit within the two-year statute of limitations. Plaintiff filed the present action on September 25, 2023, raising the same claims as the earlier lawsuit.

## II.    MOTION TO DISMISS STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271,1273 n.1 (11th Cir. 1999). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint need not contain detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The allegations "must be enough to raise a right of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted). A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion when the complaint on its face demonstrates that the limitations period has run. *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

## III.    DISCUSSION

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 for alleged violations of his rights under the Fourth, Eighth, and Fourteenth Amendments as well as under Section 1, Paragraphs XIII and XVII of the Georgia Constitution.[1] In Count I, Plaintiff claims under § 1983 that Defendants violated his clearly established right (1) to be free from unreasonable seizure; (2) to be free from cruel and unusual punishment; (3) to receive emergency medical care; and (4) to be free from racial discrimination in the administration of emergency medical services. In Count II, titled "U.S. Code Title 42, Chapter 21," Plaintiff alleges Defendants violated Plaintiff's right to public accommodations. Finally, in Counts III and IV Plaintiff seeks injunctive and declaratory relief.

Defendants argue Plaintiff's § 1983 claims are barred by the statute of limitations. Defendants further assert that, to the extent Plaintiff's public accommodations claim arises under § 1981, Plaintiff's claim is similarly barred. Defendants argue Plaintiff otherwise has failed to state a claim upon which relief may be granted. Plaintiff responds only to Defendants' statute of limitations arguments.

---

[1] Defendants note, and Plaintiff does not dispute, that § 1983 "does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002). Thus, "[w]hile the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under section 1983." *Id.* Plaintiff does not assert a separate state law tort claim based on alleged violations of the Georgia Constitution, but if he had, those claims too would be Plaintiff's barred by Georgia's two-year statute of limitations for the reasons discussed below.

A.    **Statute of Limitations**

Defendants move the Court to dismiss each of Plaintiff's claims arising under

§ 1983 as barred by the applicable statute of limitations. Defendants argue, and Plaintiff

does not contest, that Plaintiff's claims accrued sometime between August 27, 2019,

when law enforcement officers seized Plaintiff, and September 5, 2019, when Plaintiff

was released from the Cook County Jail. Defendants assert Plaintiff therefore had until,

at the latest, September 5, 2021, in which to file his lawsuit. But Plaintiff did not file this

action until September 25, 2023, two years too late. Defendants accordingly urge the

Court to dismiss Plaintiff's claims.

Section 1983 does not have its own statute of limitations. *Reynolds v. Murray*,

170 F. App'x 49, 50 (11th Cir. 2006) (citing *Owens v. Okure*, 488 U.S. 235, 236 (1989)).

All constitutional claims brought under § 1983 are instead "subject to the statute of

limitations governing personal injury actions in the state where the § 1983 action has

been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Georgia, the

statute of limitations for personal injury actions is two years. O.C.G.A. § 9-3-33; *see also*

*Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003).

Plaintiff agrees that Georgia's two-year statute of limitations applies to his

constitutional claims arising under § 1983. However, Plaintiff contends the statute of

limitations was tolled under Georgia law because he is mentally incompetent.[2]

Generally, incompetency tolls the relevant limitations period:

---

[2] Georgia law also governs tolling of the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 393-96 (2007).

> Individuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons.

O.C.G.A. § 9-3-90(a). "Decisions construing the tolling statute make plain that the application of the law is confined 'to situations where it is not fair to charge a suitor with the running of the clock, because of his mental condition.'" *Walker v. Brannan*, 243 Ga. App. 235, 236, 533 S.E.2d 129, 130 (2000) (quoting *Chapman v. Burks*, 183 Ga. App. 103, 105, 357 S.E.2d 832 (1987)).

Plaintiff argues that because he was mentally incompetent at the time of Defendants' alleged misconduct, and because his mental incapacity persists, the tolling of the limitations period has not yet ended. Plaintiff does not, however, address the impact of the appointment of a guardian to act on his behalf. That, of course, is the dispositive issue—if there is no tolling for an incapacitated adult for whom a guardian has been appointed, then the statute of limitations in this case ran long before Plaintiff filed suit.

The case law, while limited, clearly and consistently addresses when tolling stops for incapacitated adults. Mental incapacity does not toll the statute of limitations indefinitely, as Plaintiff suggests. *See Williams by and through Williams v. Fulton Cnty. Sch. Dist.*, No. 1:14-CV-0296-AT, 2015 WL 13264434, at *5 (N.D. Ga. Jan. 9, 2015) (citing *Jim Walter Corp. v. Ward*, 245 Ga. 355, 357, 265 S.E.2d 7, 9 (1980) (declining to interpret the statute of limitations in a manner that would result in the statute of limitations never running as to the mentally incompetent); *Price v. Dep't of Transp.*, 214

Ga. App. 85, 88, 446 S.E.2d 749, 752 (1994) (rejecting argument that the statute of limitations continues indefinitely for an incapacitated person). Rather, under Georgia law, tolling ceases—or in some instances may not commence—when a guardian or next friend acts on behalf of the incapacitated person.

Georgia law provides, "[w]here, as a result of an occurrence giving rise to a cause of action, the person injured becomes mentally and physically incapacitated so as to be incapable of acting for himself in carrying on his business and in prosecuting his claim, *and where no guardian is appointed for him*," the statute of limitations for bringing an action shall be tolled. *Cline v. Lever Bros. Co.*, 124 Ga. App. 22, 23, 183 S.E.2d 63, 65-66 (1971) (emphasis added). But the duration of the tolling is limited. The Georgia Court of Appeals explained in *Cline* that any period of tolling ends (1) when the incapacitated person "regains capacity to act for himself;" (2) "until such time as a guardian is appointed and actually does act for him;" or (3) "until such time as one bone fide acting for him as next friend thereafter, during the continuance of the disability of plaintiff, brings an action seeking recovery for the injury sustained." *Id.* at 23; 183 S.E.2d at 66.[3]

---

[3] Federal Rule of Civil Procedure 17 provides that an incompetent person who lacks a legal guardian may proceed through a "next friend." Fed. R. Ci. P. 17(c)(2); *see also Parrish v. Rigell*, 183 Ga. 218, 221, 188 S.E. 15, 18 (1936) ("It is well settled that a suit by any competent person may be maintained on behalf of one who is insane, though not already legally so adjudicated."). A next friend "must have some significant relationship with the real party in interest" and "be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990). He further must provide some explanation "why the real party in interest cannot appear on his own behalf"—such as mental incapacity. *Id.* at 163. A person seeking to be appointed guardian of an incompetent adult must, in contrast, petition the court. A court may appoint a guardian "only if the court finds the adult lacks sufficient capacity to make or communicate significant responsible decisions concerning his . . . health or safety" and if "the appointment is in the best interest of the adult." O.C.G.A. § 29-4-1(a) and (c). A court appointed guardian has a duty to make decisions regarding the support, care, education, health, and

The Georgia Court of Appeals, citing *Cline*, reached a similar conclusion in *Price*. The plaintiff in *Price* was injured in an automobile accident on May 10, 1983. 214 Ga. App. at 85-86, 446 S.E.2d. at 750. The plaintiff filed suit in her own name on May 9, 1985. *Id.* at 86, 446 S.E.2d at 750. Then, on August 5, 1985, the plaintiff's mother filed an amended complaint as the plaintiff's next friend because brain damage the plaintiff sustained in the accident prevented the plaintiff from acting on her own behalf. *Id.* On March 8, 1990, the plaintiff moved to add several defendants to the lawsuit. *Id.* at 87, 446 S.E.2d at 751. The trial court permitted the amendment but later granted the defendants' motion for summary judgment, concluding that the plaintiff's claims against those defendants were barred by the two-year statute of limitations. *Id.*

The Georgia Court of Appeals affirmed the trial court's ruling. On appeal, the plaintiff argued that because she was an incapacitated person, the statute of limitations was tolled indefinitely under the clear language of O.C.G.A. § 9-3-90(a). *Id.* at 88, 446 S.E.2d at 752. The Court of Appeals rejected that argument. *Id.* Consistent with *Cline*, the Court of Appeals held the entry of the plaintiff's mother as next friend started the statute of limitations running. *Id.* Consequently, any claims brought more than two years after plaintiff's mother acted on her behalf were barred by the statute. *Id.*

The Georgia Court of Appeals reached the same conclusion in *Harper v. Patterson*, 270 Ga. App. 437, 438-39, 606 S.E.2d 887, 890-91 (2004). The plaintiffs in *Harper* were a group of "mentally handicapped" and physically and emotionally disabled

---

welfare of the ward and is charged with acting in the ward's best interest through the "exercise of reasonable care, diligence, and prudence." O.C.G.A. § 29-4-22(a).

students who alleged they were sexually abused, harassed, and exploited while enrolled in a special education program some time prior to July 1998. *Id.* at 437-38, 606 S.E.2d at 889-90.[4] The plaintiffs' parents filed suit in federal court on behalf of the plaintiffs as next friends on October 22, 1999. *Id.* at 438, 606 S.E.2d at 891. The plaintiffs filed a second state court lawsuit on October 31, 2001, naming two additional defendants. *Id.* The court concluded any tolling under O.C.G.A. § 9-3-90(a) based on the plaintiffs' incapacity ended when the parents as next friends filed the first lawsuit. *Id.* at 430, at 890-91. Any claims raised in the October 2001 lawsuit against the newly named defendants were therefore barred by the statute of limitations. *Id.* at 438-39, 606 S.E.2d at 891.[5]

Examination of these cases clarifies that, contrary to Plaintiff's assertion, application of the tolling provision for incapacitated persons does not perpetually suspend the statute of limitations. Georgia law recognizes that unlike minors, whose incapacity ends upon reaching majority, "legal incompetency . . . might remain a lifetime." *Price*, 214 Ga. App. at 87-88, 446 S.E.2d at 751. Nevertheless, continuation of any mental or intellectual disability does not permanently toll the statute of limitations. Rather, once a guardian is appointed and acts on behalf of the incapacitated person or

---

[4] The court did not specify the age of the students. Contextually it is clear the students were incapacitated adults, not children.

[5] The *Harper* court distinguished the case from *Whalen v. Certain-Teed Products Corporation*, 108 Ga. App. 686, 134 S.E.2d 528 (1963), where guardians were appointed for disabled children. 270 Ga. App. at 439, 606 S.E.2d at 891. *Whalen* held the appointment of a guardian for a minor "does not operate to start the statute of limitation running against the minor or the guardian in cases where the title to the cause of action is in the minor." 108 Ga. App. at 687, 134 S.E.2d at 530.

a next friend brings an action on his behalf, any period of tolling ends. *Cline*, 124 Ga. App. at 23, 183 S.E.2d at 66.

In short, under Georgia law, when a court appoints a guardian to act on behalf of an incapacitated adult, there is no further tolling for incompetency. This is consistent with the purpose of the goal of tolling—to protect the rights of an individual who at the time a cause of action arises lacks capacity to act for himself and has no legal representative appointed to act on his behalf. As noted in *Walker*, application of the tolling statute is a matter of fairness. 243 Ga. App. at 236, 533 S.E.2d at 130. Here, there is no question of fairness. A court of competent jurisdiction declared Plaintiff legally incapacitated due to mental illness and appointed Plaintiff's parents to serve as his legal guardians well before the events underlying this case. As his legal guardians, Plaintiff's parents were authorized and obligated to act on their son's behalf. They did not, and Plaintiff's claims are now barred by the two-year statute of limitations. The Court accordingly **GRANTS** Defendants' motions to dismiss and **DISMISSES with prejudice** Plaintiff's § 1983 claims.

**B.    "U.S. Code Title 42, Chapter 21" Claims**

In Count II of his Complaint, Plaintiff asserts a claim for "unlawful racial discrimination" under "U.S. Code Title 42, Chapter 21," alleging Defendants violated his "right to public accommodations, specifically the right to receive emergency medical care and treatment." (Doc. 1, ¶ 39). Plaintiff cities generally to the Civil Rights Act and does not clearly state a specific statutory basis for his public accommodations claim. Defendants, however, point to two statutes under which an individual may establish a

claim for discrimination in public accommodations: (1) 42 U.S.C. § 1981; and (2) Title II of the Civil Rights Act of 1964, § 201, *et seq.*, as amended 42 U.S.C. § 2000a, *et seq.* (Docs. 3-1, p. 11; 6-1, p. 11) (citing *Scott v. Mackey*, No. 3:19cv3752/TKW/EMT, 2019 WL 7606239, at *3 (N.D. Fla. Dec. 26, 2019)). Defendants argue any purported § 1981 claim is barred by the two-year statute of limitations. Defendants further contend Plaintiff has not alleged facts sufficient to support a discrimination claim under § 2000a.

Plaintiff offers no argument in response. Plaintiff's failure to respond constitutes abandonment of the claim. *See Coalition for Abolition on Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding a failure to brief and argue an issue before the district court provided grounds for concluding the issue had been abandoned); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.") (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)). The Court accordingly **GRANTS** Defendants' motions to dismiss Count II of Plaintiff's Complaint.

Even if Plaintiff had responded to Defendants' motions to dismiss his public accommodations claim, Plaintiff's claim is due to be dismissed under both § 1981 and § 2000a. "Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) (citing *Butts v. Cnty. of Volusia*, 222 F.3d 891, 892-94 (11th Cir. 2000)). Defendants argue, and Plaintiff does not contest, that Georgia's two-year statute of limitations

12

applies to Plaintiff's § 1981 claim.[6]  As previously established, Plaintiff's claim arose on

August 27, 2019. Plaintiff did not file suit until September 25, 2023. Any claim Plaintiff

seeks to assert under § 1981 accordingly is barred by the statute of limitations and shall

be **DISMISSED with prejudice**.

"Because only equitable relief is available under § 2000a, courts have found that

no statute of limitations applies to § 2000a claims." *Jackson v. Waffle House*, 413 F.

Supp. 2d 1338, 1362 (N.D. Ga. 2006); *see also United States v. Johnson*, 390 U.S. 563

(1968) (explaining that a plaintiff seeking to enforce the substantive provisions of

§ 2000a can only obtain injunctive relief). The Court therefore must evaluate whether

Plaintiff's Complaint sets forth facts sufficient to establish a right to relief under § 2000a.

Section 2000a prohibits discrimination in places of public accommodation:

> [a]ll persons shall be entitled to the full and equal enjoyment of the goods,
> services, facilities, privileges, advantages, and accommodations of any
> place of public accommodation, as defined in this section, without
> discrimination or segregation on the grounds of race, color, religion, or
> national origin.

42 U.S.C. § 2000a(a). The "overriding purpose" of the law is "to [re]move the daily

affront and humiliation involved in discriminatory denials of access to facilities ostensibly

open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969).

---

[6] The Eleventh Circuit explained in *Baker* that a four-year statute of limitations applies to § 1981 claims that were made possible by the 1991 amendments to § 1981. 531 F.3d at 1337 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); 28 U.S.C. § 1658(a)). Here, Plaintiff's Complaint sets forth allegations that Defendants interfered with an emergency transfer order, thereby depriving Plaintiff of medical care to which he was entitled. (Doc. 1, ¶ 40). Plaintiff's claim most closely resembles a "denial of service" claim—a cause of action that was available under § 1981 prior to the 1991 amendments. The federal "catch all" four-year statute of limitations in § 1658 therefore does not apply. Plaintiff has not demonstrated otherwise.

To establish a claim under § 2000a, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he attempted to contract for services and to afford himself the full benefit and enjoyment of a public accommodation; (3) he was denied the right to contract for those services and, hence, was denied those benefits and enjoyments; and (4) similarly situated persons outside his protected class received full benefits or were treated better. *Jackson*, 413 F. Supp. 2d at 1361; *see also Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1322 (S.D. Fla. 2004); *Benton v. Cousins Prop., Inc.*, 230 F. Supp. 2d 1351, 1382 (N.D. Ga. 2002). Defendants contend Plaintiff's Complaint fails to establish (1) that Plaintiff was denied a public accommodation and (2) that Plaintiff was treated differently than a similarly situated individual outside his protected class.

A "place of public accommodation" is any establishment "which serves the public . . . if its operations affect commerce. . . ." 42 U.S.C. § 2000a(b). Only the following categories of establishments constitute public accommodations:

(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within

14

the premises of which is physically located any such covered
establishment, and (B) which holds itself out as serving patrons of such
covered establishment.

*Id.* Thus, under the plain language of the statute, to qualify as a place of public

accommodation, the establishment must provide lodging, sell food for consumption,

exhibit entertainment, or contain or be located within an establishment that offers one of

these services.

Plaintiff alleges Defendants violated his "right to public accommodations,

specifically the right to receive the emergency medical care and treatment mandated

under the Form 1013 Involuntary Transfer Order," including the right to be transported

to the Greenleaf Psychiatric Hospital and to receive emergency medical treatment.

(Doc. 1, ¶ 39). Nowhere in his Complaint does Plaintiff describe any establishment

included in the definition of a place of public accommodation. Rather, the crux of

Plaintiff's Complaint is that Defendants—a group of law enforcement officers—failed to

follow the statutory requirements for executing the Emergency Form 1013 Transfer

Order and consequently denied Plaintiff medical care. Plaintiff's failure to identify a

place of accommodation listed in § 2000a(b) is detrimental to his claim.

Plaintiff's Complaint likewise is devoid of allegations that any similarly situated

individual outside his protected class was subject to more favorable treatment. The

Complaint, in fact, mentions no other person who had a similar experience with

Defendants. Having failed to meet these basic pleading requirements, Plaintiff fails to

state a viable public accommodations claim. To the extent Plaintiff intended to assert a

15

public accommodations claim pursuant to § 2000a, that claim accordingly is

**DISMISSED without prejudice**.

**C.     Injunctive Relief**

In Count III of his Complaint, Plaintiff asserts a claim for injunctive relief. (Doc. 1,
¶¶ 52-59). Plaintiff alleges the facts underlying this action "reveal a startling absence of
clear policies, training, administration, supervision, and oversight regarding the clearly
established legal and constitutional rights of mentally ill and/or suicidal persons" and
demonstrate "a pattern or practice of racial discrimination against African American
individuals." (*Id.* at ¶¶ 53, 55) (emphasis omitted). Plaintiff seeks injunctive relief (1)
requiring the training of law enforcement officers in the implementation and effectuation
of an Emergency Involuntary Form 1013 Order; (2) requiring the development and
implementation of training, policies, and practices to ensure the proper handling of
mentally ill and/or suicidal persons in conformity with the Georgia Mental Health Code;
(3) prohibiting any law enforcement officials from terminating any active Emergency
Involuntary 1013 Order; and (4) preventing any law enforcement officer from being
placed in active service until the officer receives proper training in the clearly
established rights of mentally ill and/or suicidal individuals. (*Id.* at ¶¶ 57, 59).

Defendants argue Plaintiff lacks standing to seek injunctive relief because
Plaintiff has not set forth facts that, taken as true, establish a real and immediate threat
of harm. Plaintiff failed to respond to Defendants' motion to dismiss his claim for
injunctive relief. Plaintiff therefore abandoned the claim. Abandonment aside, the Court
finds Plaintiff fails to state a claim for injunctive relief.

16

"To establish standing under Article III, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the defendant's actions; and (3) that the injury will be redressed by a favorable decision." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229 (11th Cir. 2021) (internal quotation marks and citations omitted). When a plaintiff seeks injunctive relief, to meet the "'injury-in-fact' demanded by Article III," he must make an additional showing of "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quotation marks and citation omitted). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Id.* at 1329 (emphasis in original) (quotation marks and citations omitted).

Plaintiff's Complaint contains no allegations of a threat of future harm. This case arose out of Plaintiff's interaction with law enforcement officers in Adel during his emergency transport from Americus to Valdosta following a mental health crisis. There is no indication from the Complaint that Plaintiff is imminently at risk of suffering another mental health episode that will necessitate any future contact with Defendants. Absent allegations that there is a likelihood Plaintiff will encounter Defendants in the future and be subject to the same alleged unlawful conduct, Plaintiff fails to show he has standing to pursue injunctive relief. The Court therefore **GRANTS** Defendants' motions to dismiss and **DISMISSES without prejudice** Plaintiff's claim for injunctive relief.

**D.    Declaratory Relief**

In Count IV, Plaintiff seeks declaratory relief. (Doc. 1, ¶ 60). Plaintiff asks the Court to issue a declaratory judgment establishing his right to (1) receive emergency medical assessment and treatment; (2) be transported without interruption to Greenleaf Psychiatric Hospital; and (3) remain in the care, custody, and/or control of Transcare until his release into the care of the designated facility. (*Id.*).

Defendants move to dismiss Plaintiff's claim for declaratory relief. Defendants argue Plaintiff cannot show a real and immediate threat of future harm; therefore, there is no actual controversy sufficient to justify entry of a declaratory judgment. Plaintiff again failed to respond to Defendants' motions and has abandoned this claim. The Court nevertheless has evaluated Plaintiff's request for declaratory relief and determined Plaintiff's Complaint fails to establish entitlement to the relief requested.

"The federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Consistent with the "cases" and "controversies" requirement, the Declaratory Judgment Act provides, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "The Article III case or controversy requirement sets fundamental limits on the federal judiciary's power in our society," including "the requirement that a litigant have 'standing' to invoke the power of the federal court." *Malowney*, 193 F.3d at 1346.

"In order to demonstrate that a case or controversy exists to meet the Article III standing requirement," a plaintiff seeking declaratory relief "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Id.* (citations omitted). Declaratory judgment is not a remedy to redress past harm. *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210-11 (11th Cir. 2019).

The Court finds Plaintiff's Complaint fails to allege facts that, accepted as true, raise a right to relief under the Declaratory Judgment Act. Plaintiff alleges Defendants denied him the right to be transported and to receive emergency medical assessment and treatment for his alleged mental health crisis but fails to plead any facts suggesting there is a substantial likelihood he will suffer any future injury. Absent facts from which it may be inferred there is "a substantial continuing controversy" between the parties, Plaintiff's claim for declaratory judgment fails to satisfy the actual controversy requirement to establish standing. *Malowney*, 193 F.3d at 1347. Any declaration that Defendants denied Plaintiff a constitutional right in the past "would [be] nothing more than a gratuitous comment without any force or effect." *Id.* at 1348 (quotation marks and citation omitted). The Court therefore **GRANTS** Defendants' motions to dismiss and **DISMISSES without prejudice** Plaintiff's claim for declaratory judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. (Docs. 3,6). Finding Plaintiff failed to file this lawsuit within the applicable statute of limitations, the Court dismisses Plaintiff's claims arising under 42 U.S.C. §§ 1981 and

1983 with prejudice. The Court dismisses without prejudice Plaintiff's claims for discrimination in a place of public accommodation and for injunctive and declaratory relief for failure to state a claim.

**SO ORDERED** this 4th day of June, 2024.

S/Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT